Argued and submitted November 7, 1990, the decisions of the Court of Appeals affirmed, but on different grounds and the judgments of the circuit courts affirmed January 30, 1992

STATE OF OREGON,
by and through its
DEPARTMENT OF TRANSPORTATION,
*Respondent on Review,*

*v.*

Walter C. LUNDBERG,
Individually and as the Personal Representative of
the Estate of Frances J. Lundberg, Deceased,
*Petitioner on Review.*

(CC A8801-00481; CA A50223; SC S37157)

STATE OF OREGON,
by and through its
DEPARTMENT OF TRANSPORTATION,
*Respondent on Review,*

*v.*

ATLAS CONSTRUCTION COMPANY,
*Petitioner on Review.*

(CC A8711-06919; CA A50779; SC S37205)
(Cases Consolidated for Argument and Decision)

825 P2d 641

G. Kenneth Shiroishi, Portland, argued the cause for petitioner on review Walter C. Lundberg. With him on the petition were Dunn, Carney, Allen, Higgins & Tongue, John M. Keller, and Keller & Keller, P.C., Portland.

Paul G. Dodds, Portland, argued the cause for petitioner on review Atlas Construction Company. On the petition were James W. Hendry and Brownstein, Rask, Sweeney, Kerr, Grim & DeSylvia, Portland.

Jas. Adams, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

UNIS, J.

## UNIS, J.

■    In these consolidated cases, the State of Oregon, by and through its Department of Transportation (plaintiff), acquired two pieces of property, located along S.E. 82nd Avenue in Portland, in condemnation actions under its power of eminent domain.[1] At each trial, the state offered evidence of the existence of a sidewalk dedication ordinance passed by the City of Portland (city). The evidence was offered to suggest that, because of certain limitations placed on uses of the properties by the ordinance, the properties were worth less than they otherwise would have been. In each case, the trial court admitted the evidence for the jury's consideration over timely objection by the owners of the properties. The issue before us is whether the trial court in each proceeding erred in its ruling. We hold that they did not err.

On August 20, 1980, the Portland City Council adopted a land use plan that sought to "create a safe and efficient transportation pattern along 82nd Avenue," "minimize conflicts between vehicular and pedestrian movement," "provide safe pedestrian circulation to community facilities," and "improve the visual appearance" along S.E. 82nd Avenue. In furtherance of those goals, the plan called for widening S.E. 82nd Avenue by establishing an 80-foot right-of-way, which includes a 60-foot roadway (containing four travel lanes and a center lane for left turns) and 10-foot sidewalks with street trees.

On March 11, 1981, a sidewalk dedication ordinance, Portland City Code (PCC) § 17.88.010, was adopted.[2] It provides in part:

"No single family, multiple dwelling, industrial or commercial building shall be constructed, or altered so as to increase

---

[1] "Eminent domain is the power inherent in a sovereign state of taking or of authorizing the taking of any property within its jurisdiction for a public use or benefit." *MacVeagh v. Multnomah County,* 126 Or 417, 431-32, 270 P 502 (1928). Condemnation is the "[p]rocess of taking private property through the power of eminent domain." Black's Law Dictionary 292 (6th ed 1990). The procedures for condemnation by the state are outlined in ORS 281.210 to 281.260.

[2] ORS 227.215(2) provides:

"A city may plan and otherwise encourage and regulate the development of land. A city may adopt an ordinance requiring that whatever land development is undertaken in the city comply with the requirements of the ordinance and be undertaken only in compliance with the terms of a development permit."

its number of occupants, on property that does not have direct access by frontage or recorded easement with not less than 10 feet width of right-of-way to a street used for vehicular traffic. If such street or any other street adjacent to the property used for vehicular access for said property does not have a standard full width improvement, including sidewalks, the owner as a condition of obtaining a building permit, conditional use, zone change, land partition or variance, shall provide for such an improvement or a portion thereof as designated by the City Engineer, in accordance with provisions elsewhere in this Title."

Defendants Lundberg and Atlas Construction Co. (Atlas) each own commercially-zoned property that abuts S.E. 82nd Avenue. Lundberg's property is vacant; Atlas' property contains nine rental cottages. The parties agree that the highest and best use for the properties is commercial. No zoning change is, therefore, required. Neither defendant has applied to the city for a building permit, conditional use permit, zone change, land partition, or variance.

In these condemnation actions, plaintiff sought to acquire a 10-foot strip along each defendant's property as part of plaintiff's project to improve S.E. 82nd Avenue. That project included constructing sidewalks. The property sought to be acquired was to be used for sidewalks. After the parties in each case were unable to agree in 1987 as to the appropriate price for the acquisition, plaintiff brought these condemnation actions.

The sole issue at each trial was the just compensation to which each defendant was entitled for the property taken. Before trial, each defendant filed a motion *in limine*, seeking to prohibit plaintiff from introducing evidence and plaintiff's counsel from making statements or arguments relating to PCC § 17.88.010. Each defendant argued that PCC § 17.88.010 was (a) not relevant to any issue presented at trial, (b) unconstitutional as applied[3] because its dedication requirement violated the takings clause of the Fifth Amendment to the United States Constitution,[4] made applicable to

---

[3] Neither defendant contends that the mere enactment of PCC § 17.88.010 effected a taking or that it is unconstitutional on its face.

[4] The Fifth Amendment to the United States Constitution provides that

the states by the Fourteenth Amendment, and (c) inadmissible under *U.S. v. Virginia Electric Co.*, 365 US 624, 636, 81 S Ct 784, 5 L Ed 2d 838 (1961), which stated that "[t]he court must exclude any depreciation in value caused by the prospective taking once the Government 'was committed' to the project" (citing authorities).

In each proceeding, the trial court denied the motion and admitted the code provision in evidence, as well as expert testimony concerning its effect on the fair market value of each property. The trial courts also allowed plaintiff's counsel to refer to the code provision in opening statements and closing arguments. In each trial the jury did not agree with defendant's value of the condemned property and awarded defendant Lundberg $200 and defendant Atlas $2,500. The Court of Appeals affirmed each judgment. *Dept. of Trans. v. Lundberg*, 100 Or App 601, 788 P2d 456 (1990); *Dept. of Trans. v. Atlas Construction Co.*, 101 Or App 245, 789 P2d 20 (1990).

We allowed review to determine whether the trial courts erred in allowing the juries to consider the impact of PCC § 17.88.010 on the fair market value of the condemned property. We conclude that the trial courts did not err. We affirm the decisions of the Court of Appeals, but on different grounds than those stated by that court.

■ Defendants first contend that PCC § 17.88.010, the city's sidewalk dedication ordinance, has no relevance to the value of the condemned property because they have not applied for any land use approvals that would invoke the sidewalk dedication requirement and that, therefore, its evidentiary use by the juries concerning its impact on the fair market value of the condemned property is speculative. We disagree.

---

"private property [shall not] be taken for public use, without just compensation."

Defendants also relied on Article I, section 18, of the Oregon Constitution, which provides that "[p]rivate property shall not be taken for public use * * * without just compensation." Defendants, however, do not suggest any different analysis under the Oregon Constitution than under the United States Constitution. Therefore, we assume for purposes of this case, without deciding, that the analysis would be the same under the Oregon Constitution. *See State v. Mendez*, 308 Or 9, 19, 774 P2d 1082 (1989) (this court declined to consider a state constitutional claim because the party "failed to brief or argue any independent state constitutional theory").

■ In a condemnation action, the owner of property taken for public use by a public body is entitled to "just compensation." US Const, Amend V. Just compensation is full remuneration for loss or damage sustained by an owner of condemned property. It is the fair market value of the condemned property or the fair market value of that of which the condemnee has been deprived by reason of the acquisition of the condemnee's property. *State Highway Comm. v. Hooper*, 259 Or 555, 560, 488 P2d 421 (1971). In the case of a partial taking of property, the measure of damages is the fair market value of the property acquired plus any depreciation in the fair market value of the remaining property caused by the taking. *Id.*[5] Fair market value is defined as the amount of money the property would bring if it were offered for sale by one who desired, but was not obliged, to sell and was purchased by one who was willing, but not obliged, to buy. *Highway Comm. v. Superbilt Mfg. Co.*, 204 Or 393, 412, 281 P2d 707 (1955) (citing *Page v. Linn County*, 135 Or 430, 437, 296 P 65 (1931)). Just compensation requires that valuation of property be based on its highest and best use.[6]

> " 'Highest and best use is that which, at the time of appraisal, is the most profitable likely use of a property. It may also be defined as that available use and program of future utilization which produces the highest present land value.' "

2 Damages § 22.4, at 22-4 to 22-5 (Oregon CLE 1990), quoting American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* 43 (7th ed 1978). The highest and best use of property may be other than the use to which the property is currently put if it is reasonably probable that the property has actual potential for higher and better use. *State Highway Com. v. Arnold*, 218 Or 43, 57, 341 P2d 1089, *modified* and *reh den* 218 Or 81, 343 P2d 1113 (1959); *Highway Com. v. Assembly of God*, 230 Or 167, 176, 368 P2d 937 (1962). The question of the highest and best use of particular property is

---

[5] The depreciation in the fair market value to the remaining property is called "severance damages." *State Highway Comm. v. Hooper*, 259 Or 555, 560, 488 P2d 421 (1971).

[6] Valuation of property is measured as of the date the condemnation action is commenced or the date the condemnor enters on and appropriates the property, whichever first occurs. *See State Highway Com. v. Stumbo*, 222 Or 62, 74-77, 352 P2d 477 (1960); *State ex rel Dept. of Trans. v. Glenn*, 288 Or 17, 23, 602 P2d 253 (1979); *Highway Com. v. Assembly of God*, 230 Or 167, 177, 368 P2d 937 (1962).

not a question of constitutional magnitude or of law, but is a question of fact that relates to the question of value and is to be decided by a jury. *Douglas County v. Briggs*, 286 Or 151, 157, 593 P2d 1115 (1979).

■　　　The issue, then, is whether the sidewalk dedication ordinance is relevant to the issue of just compensation. Proffered evidence is relevant under OEC 401 if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See State v. Clowes*, 310 Or 686, 692, 801 P2d 789 (1990) (rephrasing and applying Oregon Evidence Code (OEC) 401 relevancy standard). This standard is a very low threshold that evidence must cross to be considered relevant. Whether the proffered evidence satisfies the minimum threshold of relevancy required by OEC 401 is a preliminary question for the trial judge under OEC 104(1). *Id.*

In determining the fair cash market value of the land condemned, "all considerations that might fairly be brought forward and reasonably be given substantial weight in negotiations between the owner and a prospective purchaser" should be taken into account. *Highway Comm. v. Superbilt Mfg. Co., supra*, 204 Or at 412. Although "any evidence purporting to show the adaptability of land to a use not yet made of the property is conjectural[,] * * * the rule against speculative uses does not preclude evidence of the adaptability of land to the highest and best use." *Highway Com. v. Assembly of God, supra*, 230 Or at 176.

As previously stated, Lundberg's property is vacant; Atlas' property contains nine rental cottages. The highest and best use for each of defendant's property is commercial. Defendants could not develop their commercially-zoned property without first satisfying the ordinance's sidewalk dedication requirement. The ordinance's sidewalk dedication provision is a matter that tends to affect the fair market value of the condemned property for its highest and best use. A reasonable seller or buyer would want to consider the ordinance in determining fair market value because it imposes a restriction on the owner's use of the condemned property, which tends to affect the property's fair market value. PCC §

17.88.010 satisfies the minimum threshold of relevancy required by OEC 401.[7]

■     Defendants next claim that PCC § 17.88.010 is unconstitutional as applied. Relying on *Nollan v. California Coastal Comm'n*, 483 US 825, 107 S Ct 3141, 97 L Ed 2d 677 (1987), defendants claim that, because they have not applied for any land use approvals that make PCC § 17.88.010 applicable, there is no rational nexus between that ordinance's sidewalk dedication requirement and the *present* use of their properties. Stated differently, defendants assert that the evidentiary use of the ordinance by the juries to determine just compensation gives a premature immediate effect to the ordinance's sidewalk dedication requirement and, therefore, under *Nollan* constitutes an unconstitutional taking. We disagree.

In *Nollan*, a coastal development land use permit to rebuild an ocean-front building was granted to prospective purchasers of a beach-front lot on the condition that they grant an easement for the public to gain access to the ocean across a portion of their property. The purchasers contended that the imposition of that condition constituted a taking of their private property without just compensation in violation of the Fifth Amendment. The Supreme Court of the United States held that this type of condition amounts to an unconstitutional taking unless there is an "essential nexus" between the land use regulation that the permit condition is intended to implement and the permit condition. The Court described this requirement:

   "[A] permit condition that serves the same legitimate [governmental] purpose as a refusal to issue the permit

---

[7] The relevance standard in condemnation proceedings before the adoption of the Oregon Evidence Code was similar. *See State Highway Com. v. Bailey*, 212 Or 261, 307, 319 P2d 906 (1957) (any matter that would be considered by a prospective vendor or buyer or which tends to enhance or depreciate the value of the property is relevant in a condemnation action for the purpose of determining fair market value); *Highway Comm. v. Superbilt Mfg. Co.*, 204 Or 393, 412, 281 P2d 707 (1955) (in determining fair market value of property condemned, "all considerations that might fairly be brought forward and reasonably be given substantial weight in negotiations between the owner and a prospective purchaser" should be taken into account); *see also* 5 J. Sackman, Nichols on Eminent Domain 18-54, § 18.11 (Rev 3rd ed 1989) (generally, zoning regulations or other ordinances that place restrictions on the owner's use of the property are factors that would be considered by a prospective purchaser and, therefore, are relevant to determining the fair market value of the condemned property).

should not be found to be a taking if the refusal to issue the permit would not constitute a taking. * * *

"The evident constitutional propriety disappears, however, if the condition substituted for the prohibition utterly fails to further the end advanced as the justification for the prohibition. * * * In short, unless the permit condition serves the same governmental purpose as the development ban, the building restriction is not a valid regulation of land use but 'an out-and-out plan of extortion.' "

*Nollan v. California Coastal Comm'n, supra,* 483 US at 836-37 (citing authority). The Court concluded that the permit condition did not serve any of the purposes relied on to justify its imposition. The lack of nexus between the permit condition and the purpose of the building restriction converted that purpose to "the obtaining of an easement to serve some valid governmental purpose, but without payment of compensation[,]" *i.e.,* to an unconstitutional taking. *Id.* at 837.

As stated in the city's land use plan, some of the city's purposes for installing sidewalks along S.E. 82nd Avenue are to "minimize conflicts between vehicular and pedestrian movement" and to "provide safe pedestrian circulation to community facilities." The ordinance first states that "[n]o single family, multiple dwelling, industrial or commercial building shall be constructed, or altered so as to increase its number of occupants" on property that does not have a sidewalk. The ordinance then provides that, if the street adjacent to "said property does not have a standard full width improvement, including sidewalks," the property owner must dedicate the necessary property for a sidewalk as a condition for obtaining the land use permit necessary for developing the property.

When read together with the city's land use plan, it is apparent that one purpose of the ordinance is to protect the increased pedestrian traffic that may result when the owner develops his or her property "so as to increase its number of occupants." The requirement of sidewalk dedication reasonably relates to commercial development by providing pedestrian access and mitigates the negative impact of any proposed commercial use by buffering both the pedestrian and the commercial use from the vehicle use. The city's

means for achieving these objectives is to require the owner to dedicate property for a sidewalk when the owner seeks to develop the property. The ordinance substantially furthers those purposes. An essential nexus exists between development of property abutting public streets and sidewalk dedication. The sidewalk dedication requirement in PCC § 17.88.010 serves the same legitimate governmental purposes that would justify denying defendants permits to develop their commercially-zoned properties. Although the sidewalk dedication requirement results in an appropriation of land for a public use, *Security & Invest. Co. v. Oregon City*, 161 Or 421, 432, 90 P2d 467 (1939), under *Nollan* that requirement would not be considered a taking if it were attached to a permit to develop property. *See Nollan v. California Coastal Comm'n, supra*, 483 US at 836. PCC § 17.88.010 is, therefore, a valid regulation of the use to which defendants' properties can be put.

The question, then, is whether, as defendants claim, the evidentiary use of the ordinance by the juries to determine just compensation gives a premature immediate effect to the ordinance's sidewalk dedication requirement and, therefore, constitutes an unconstitutional taking. The answer is "no."

We have concluded that, on application for a land use approval, the sidewalk dedication requirement would not be unconstitutional under *Nollan*. We also have concluded that the existence of the sidewalk dedication requirement is relevant to determining just compensation for the property. The fact that defendants have not applied for any land use approvals does not, therefore, convert the evidentiary use of the ordinance by the juries to determine the fair market value of the condemned property into an unconstitutional taking. Evidentiary use in a condemnation action of a valid regulation of a condemnee's land use that is a relevant factor in determining just compensation does not constitute an unconstitutional taking.[8] Accordingly, PCC § 17.88.010 is not unconstitutional as applied in these condemnation actions.

---

[8] The evidence is that, even without the sidewalk dedication requirement, neither defendant could have developed the property taken because the city's 15-foot setback ordinance would preclude development of that property.

■     Defendants' final contention is that the city adopted the sidewalk dedication ordinance *in order to depress property values* before the state undertook condemnation actions. Relying on *U.S. v. Virginia Electric Co.*, *supra*, defendants assert that an ordinance that depresses the value of real property in contemplation of later condemnation cannot be used as evidence in a condemnation action involving that property and that, therefore, the trial courts erred in admitting the ordinance. The Court of Appeals rejected defendants' argument on the basis that "it was not the condemnor state's action that reduced the value of the property; it was the *city's* ordinances that had that effect." *Dept. of Trans. v. Lundberg*, *supra*, 100 Or App at 605. (Emphasis in original.)

■     Under *U.S. v. Virginia Electric Co.*, *supra*, "[t]he court must exclude any depreciation in value caused by the prospective taking once the Government 'was committed' to the project." 365 US at 636 (citing authorities). This rule is premised on the reasoning that " '[i]t would be manifestly unjust to permit a public authority to depreciate property values by a threat * * * [of the construction of a government project] and then to take advantage of this depression in the price which it must pay for the property' when eventually condemned." *Id.* (quoting authority).

We need not decide in this case whether we agree with the Court of Appeals' holding that the rule enunciated in *Virginia Electric* cannot apply when a *city* ordinance reduces the value of the property taken, but the *state* condemns the property. Assuming that the rule of *Virginia Electric* may apply when one governmental body acts in order to reduce the value of the property when another governmental body is committed to condemning the property, defendants have not established the necessary link. That is, defendants have not shown that PCC § 17.88.010 (the city's sidewalk dedication ordinance), evidence of which they sought to exclude, was promulgated in order to reduce the value of the property at a time when the state was committed to condemning the property in order to widen S.E. 82nd Avenue.[9]

---

[9] If the purpose for the enactment of PCC § 17.88.010 caused that ordinance to violate the rule of law announced in *U.S. v. Virginia Electric Co.*, *supra*, the ordinance, although relevant, would nonetheless be inadmissible under OEC 402, which states:

Defendants assert that the similarity of the city's land use plan and the state's plan is proof that the city and state were acting together in widening S.E. 82nd Avenue and that, consequently, the sidewalk dedication ordinance was enacted to facilitate the state's S.E. 82nd Avenue project. But mere adoption of either the city's land use plan or the sidewalk dedication ordinance does nothing by itself to prove that the city adopted either the plan or the ordinance in order to reduce property values for the state's subsequent project, which involved taking property along S.E. 82nd Avenue. The ordinance itself has general applicability beyond S.E. 82nd Avenue. Even if the ordinance were adopted in order to implement the city's land use plan for S.E. 82nd Avenue, however, that plan was based on the goals of "minimiz[ing] conflicts between vehicular and pedestrian movement" and "provid[ing] safe pedestrian circulation to community facilities." Essentially, defendants have offered nothing more than the existence of the sidewalk dedication ordinance and the existence of the state's project to support their claims that the purpose of the ordinance was to depress property values in contemplation of the state's condemnation proceedings. Defendants also have not shown that at the time of the enactment of the ordinance the state was committed to its S.E. 82nd Avenue project.

Defendants have failed to establish that, under *U.S. v. Virginia Electric Co.*, *supra*, the ordinance was a "prospective taking once the Government 'was committed' to the project" that would result in a taking. PCC § 17.88.010 was, therefore, properly admitted in evidence.

We hold that the trial court in each condemnation proceeding did not err in allowing evidence relating to PCC § 17.88.010 to be heard by the jury that determined the fair market value of the 10-foot roadside strip acquired by plaintiff under its power of eminent domain for the purpose of widening S.E. 82nd Avenue and putting in a sidewalk.

---

"All relevant evidence is admissible, *except as otherwise provided* by the Oregon Evidence Code, *by the Constitutions of the United States* and Oregon, or by Oregon statutory and decisional law. Evidence which is not relevant is not admissible." (Emphasis added.)

The decisions of the Court of Appeals are affirmed, but on different grounds. The judgments of the circuit courts are affirmed.